ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of FRANCES C. HENDERSON, deceased.

[Decided November 16th, 1926.]

**Wills—Construction—Accounting—Question Whether Estate in Trust For Granddaughter of Testatrix Shall be Paid at Her Death to Her Personal Representatives Who are Not Blood Relations, or to Grandson of Testatrix, Brother of Deceased Granddaughter—Held, That Will Must be Viewed as a Whole, and That From Such a View Estate Must Go to Grandson.**

On petition upon an accounting for decree of distribution.

*Messrs. Waddington & Mathews,* for Pennsylvania Company for Insurance on Lives and Granting Annuities and Andrew A. Blair, as trustees under the will of Frances C. Henderson.

*Mr. Robert H. McCarter,* for Arthur H. Geissler.

*Mr. John M. Emery,* for Pinckney H. Adams, as guardian for Florence and Elizabeth Adams.

*Messrs. Lindabury, Depue & Faulks,* for Pinckney H. Adams, individually.

*Messrs. Carrick & Wortendyke* (specially), for Ernst Franz and Clemens von Pruschen.

FLANNAGAN, J.

This is a proceeding by petition for instructions upon an accounting as to the distribution of income under the will of Frances C. Henderson, deceased.

All the parties are before the court, the von Pruschens having been lately brought in by order to show cause. They

fail to appear except to contest the jurisdiction of the court to dispose of *corpus* of the estate.

At the time of the death of testatrix she had two living children, both daughters, both married, one Mrs. Fanny von Pruschen and the other Mrs. Julia Adams.

Testatrix also had five grandchildren, four of them grandsons and one a granddaughter, three of these grandsons were young men all over twenty-five years of age, the sons of Mrs. Fanny von Pruschen. The granddaughter and the other grandson were children of Mrs. Adams, the granddaughter being about twenty-eight years of age and the Adams grandson about eighteen years of age. None of the grandchildren were married, but all were of marriageable age except the Adams boy (J. Pinckney H. Adams).

This was the family situation at the time of the death of the testatrix, and also substantially at the time of the making of her will, her will having been made only about two years before her death.

After disposing of her jewelry, furniture and other domestic effects to her daughter Mrs. Julia Adams, the testatrix's will divided her property into two equal shares or parts, both parts being left to the same trustees, the interest and profits from one part to be paid to her daughter Fanny von Pruschen, "regularly as long as she lives," and the interest and profits from the other part to be paid to her daughter Julia Adams, "regularly as long as she lives."

The testatrix then made express provisions for the following contingencies—

*First.* For the accumulation of income for his or her benefit in case either of the grandchildren should be under thirty years of age at the time of the death of their mother, such accumulation to continue until such grandchild should attain to thirty years of age, whereupon his or her "moiety" should be paid over to him or her "regularly."

*Second.* In the event of either grandchild dying "unmarried," his or her share to be added to the share of the sister or brother.

*Third.* In case of the marriage of the granddaughter, such granddaughter's share to be free of any control, interference or debts of any husband.

*Fourth.* The share of any grandson to be clear of any claim or demand of any creditor of his.

*Fifth.* In the event there should be no great-grandchildren, on the Julia Adams side, left at the time of the death of the grandchildren (the testatrix's child, Julia Adams, being dead also), then, all the property left in trust for the daughter Julia Adams, and for her children, is directed to be placed in trust for the other daughter of testatrix, Fanny von Pruschen, or her children and "only the income paid over."

The clause making these last provisions reads as follows:

"Should neither of the children of my daughter Julia leave children, then, after her death and theirs, all the property herein left in trust for her or them shall be placed in trust for my daughter Fanny or her children, and only the income paid over."

No express language is found in the will providing for the termination of the trust, and no other contingencies which now exist or may hereafter arise are expressly provided for, except those already above stated.

No questions are before the court in regard to the Fanny von Pruschen share—the only question which must now be disposed of being the disposition of a subshare of the income arising out of the Julia Adams share.

This question arises out of the following facts:

After the death of testatrix, one of her grandchildren, *i. e.,* the granddaughter (herself named Julia, and the daughter of Julia Adams), married a Mr. Geissler, and the testatrix's daughter, Julia Adams, having died, the income of one-half the Adams share was paid to Mrs. Geissler, the income from the other half being paid to the other Adams grandchild, to wit, Pinckney Adams. On March 1st, 1925, Mrs. Geissler died without issue, leaving a husband surviving and a will in his favor as residuary legatee, and appointing him her executor.

The question presented is, Who is now entitled to the income formerly paid to Mrs. Geissler during her lifetime? It is claimed, first, by her husband, Mr. Geissler; second, by her brother, Pinckney Adams, and third, by the infant children of Pinckney Adams, being the testatrix's great-grandchildren, Florence Day Adams and Elizabeth M. Adams.

As there is, as already indicated, no express language in the will covering the situation presented, the answer to the question, if it is to be found in the will at all, must be found by viewing it as a whole and by implication from its terms.

Viewing the will as a whole, there is manifest in its provisions a strong family instinct and the dominant purpose to benefit testatrix's own kin equally *per stirpes*. Not a dollar goes to any outside object or purpose. Except for her household and personal effects, she ties up her entire estate in trust, specifying none but her own kin as beneficiaries. Her beneficial contingent provisions extend beyond the end of the lives of unborn great-grandchildren, the possible issue of unmarried grandchildren; and she saw to it that in the event of failure of great-grandchildren of the Julia Adams line, the Julia Adams share should be "placed" in trust for beneficiaries of her own blood line, going to the Fanny von Pruschen branch. Not an express provision is found contemplating any control or benefit outside of those of her own blood, and, on the contrary, she expressly provides that her bounty shall be free of any control of any husband of her granddaughter (Mrs. Geissler), or from the creditors of her grandson (Pinckney Adams). No thought of an ultimate distribution of the *corpus* of the estate finds definite expression anywhere in the will, the thought continually recurring being the enjoyment of income by those of her own blood, reserving the *corpus* to produce more income for the benefit of succeeding kin; each succeeding generation in each line enjoying the share of its progenitor.

The dominant purposes manifested in the will by testatrix were natural and normal. They were, first, to dispose of her entire estate; second, to benefit those of her own blood, and

third, to do so in proportion to the nearness of their relationship to her, each generation succeeding to the share of its predecessor.

As to the contention that Mr. Geissler, as executor of his wife, is now entitled to the income which was enjoyed by her during her lifetime, the result of such contention, if it be sound, would be that Mr. Geissler, individually, as residuary legatee under his wife's will, would enter upon the enjoyment of her subshare of the income. Mr. Geissler stands as a stranger to testatrix and not of her blood, and the contention flies in the face of the dominant purposes of the will.

The foundation of the contention in behalf of Mr. Geissler is the following clause taken in connection with the clause already quoted:

"As each child [referring to children of testatrix's daughter Julia] reaches the age of thirty [if my daughter Julia is already dead], his or her share of the accumulated interest as well as of the regular income from said moiety is to be paid to him or her regularly. Should either child die unmarried his or her share is to be added to the share of the sister or brother, as the case may be."

The theory upon which the claim is based is set forth in the brief of Mr. Geissler's counsel, as follows:

"Mr. Geissler's contention of his right as executor to the income of one-half of the moiety accumulated and current is based upon the following idea: That at the time of his wife's death, she [Julia H. Geissler] was seized, possessed and the true owner of the *corpus* of one-fourth of the entire estate of Frances C. Henderson, subject to the contingency that she die married, and further subject to the contingent remainder in favor of the three von Pruschens; that the fact that Mrs. Geissler died married, defeated the remainder in favor of J. Pinckney H. Adams."

It is not contended that any express provision is to be found in the will leaving any *corpus* of the estate to Mrs. Geissler—the will provides that "the regular income" is to be paid to her "regularly." The claim rests upon the theory

of an implied bequest of *corpus,* such implication arising, as is claimed, from the gift of the income under the terms of the clauses quoted.

It is conceded by Mr. Geissler that this income would end with the life of Pinckney Adams, leaving no surviving issue, when it would pass to the von Pruschen branch.

At the time of the death of testatrix, Mrs. Geissler (her granddaughter) was not married to Mr. Geissler. Mr. Geissler's contention involves imputing to the testatrix the intention that in case of Mrs. Geissler dying married, but childless, then her nominees or next of kin should enjoy an estate terminable with the life of Pinckney Adams, dying childless. The testatrix's will expressly provided that in case of the death of the granddaughter unmarried her share should pass to her brother, Pinckney Adams. There is no conceivable natural reason of affection, or otherwise, why the testatrix should intend to give the share of her granddaughter to her grandson in case the granddaughter died unmarried and yet give the next of kin or nominees of the granddaughter, in case she dies married, but childless, an income terminable with the life of the grandson and to his exclusion. No connection between the grandson's life and an income to a nominee of the childless granddaughter is imaginable from the facts presented.

The court will not raise an implication for the purpose of making a distribution of testatrix's property in a manner for which no natural or logical desire can be seen.

The paramount intentions of the testatrix, as plainly evident from her whole will, can only be satisfied by a distribution of the subshare of the income, enjoyed heretofore by Mrs. Geissler, to her brother, Pinckney Adams. The reasoning of the court in *Denise* v. *Denise, 37 N. J. Eq. 163; Hanneman* v. *Richter, 62 N. J. Eq. 365; affirmed, 63 N. J. Eq. 803; Holton* v. *White, 23 N. J. Law 330; Barnard* v. *Barlow, 50 N. J. Eq. 131,* and *51 N. J. Eq. 620* (the latter as to disposition of income), sustains such an implied bequest. Distribution will be ordered accordingly.